THE STATE OF KANSAS, *ex rel.*, v. JOHN S. GILMORE.

1. MEMBER OF LEGISLATURE; *Removal from Office.* A member of the legislature cannot be removed from office under chapter 122 of the laws of 1875.

2. ——— Exclusive power to judge of the qualifications of its own members, is vested in each house, and cannot by its own consent, or by legislative action, be vested in any other tribunal or officer.

3. ——— This power is not exhausted by the admission of a member to his seat, but continues during the entire term of office.

*Error from Wilson District Court.*

CH. 122, Laws of 1875, page 183, contains the following provision:

"SEC. 1. Any state, district, city, county, or township officer of this state, for whose removal from office by impeachment there is no provision, [who] shall in any public place within the state be in a state of intoxication produced by strong drink voluntarily taken, such officer shall be deemed to have committed an offense against public morals, and on conviction thereof shall be adjudged to have forfeited his office, and his said office shall thereupon be declared vacant by the court trying the cause."

*Gilmore* was chosen a member of the lower house of the state legislature at the general election held in November 1876, from Wilson county, for the term of two years from the second Tuesday of January 1877, and he duly qualified as such officer. On the 30th of March 1878, W. L. Martin, as petitioner or relator, commenced an action under said act of 1875, in the name of *The State of Kansas,* as plaintiff, alleging that *Gilmore,* in August 1877, while a member of the state legislature, holding the office of representative from the fifty-fourth representative district, "was guilty of being in a state of intoxication produced by strong drink voluntarily taken." *Gilmore* demurred, for that the petition of said plaintiff did not state facts sufficient to constitute a cause of action. The district court, at the May Term 1878, sustained said demurrer, and gave judgment dismissing said

petition, and adjudged the costs against Martin, the relator. *The State* brings the case here.

*J. A. McHenry*, county attorney, and *Kirkpatrick & Burge*, for plaintiff.

*Cates & Keplinger*, and *C. C. Chase*, for defendant.

The opinion of the court was delivered by

BREWER, J.: Defendant is a member of the present House of Representatives of this state, having been elected in the fall of 1876. This action was brought under chapter 122 of the laws of 1875, to remove him from office; and the single question presented is, whether the action will lie against him under that statute. It provides for the removal from office of "any state, district, city, county, or township officer of this state, for whose removal from office by impeachment there is no provision." The constitution, art. 2, section 28, reads: "The governor, and all other officers under the constitution, shall be subject to impeachment." And chapter 49 of the general statutes prescribes the general mode of procedure. On the one hand, it is claimed that in the comprehensive words, "all other officers under the constitution," are included members of the legislature, and that they too are subject to impeachment, and therefore not included within the scope of said chapter 122. And on the other, that by the decision in the Blount case, it was long ago held by the United States senate, that members of that senate were not subject to impeachment, and that by the common understanding and consent of all, this decision has been considered as applicable to members of all state legislatures, and that therefore the general words of our constitution must be construed with this implied exception. So far as the federal legislature is concerned, the decision in the Blount case, though rendered by a closely-divided senate, (14 to 11,) has ever since been accepted as a correct exposition of the law, and that question is doubtless forever at rest. Yet that there is a marked distinction between the language of the federal

and the state constitutions, is clearly shown by the able opinion of his honor, Judge Talcott, who decided this case in the district court, from which we quote as follows:

"By the federal constitution, those subject to impeachment are, 'the president, vice-president, and *all civil officers of the United States.*' By our state constitution, those subject to impeachment, are, 'the governor, and *all other officers under this constitution.*' Perhaps an understanding of the terms 'civil officers of the United States,' as used in the federal, and 'all other officers under this constitution,' as used in our state constitution, will help in discovering the difference, if any, between the two. Judge Story, in the first volume of his work on the constitution, at section 793, after stating that the reasoning by which the construction given to the federal constitution does not appear, says, 'But it was probably held that *civil officers of the United States* meant such as derived their appointment from and under the national government, and not those persons who, though members of the government, derived their appointment from the states, or the people of the states.' With this definition, it will be seen at once, that a United States senator is not a 'civil officer of the United States,' within the meaning of that provision of the constitution, because he derives his 'appointment from the states, or the people of the states,' and not 'from and under the national government.' In giving the construction it did, the question was, 'whether a senator was a civil officer of the United States,' within the purview of the constitution; and it was decided by the senate that he was not. Then, as a United States senator is not a 'civil officer of the United States,' and is not the president, or vice-president, he cannot be impeached, for by the terms of the federal constitution they are the only persons who can be impeached.

"Now, as to our state constitution. It does *not* provide that the governor, 'and all civil officers of the' *state;* or, that the governor, and all 'such as derived their appointment from and under the' *state government;* or, the governor and all civil officers under this constitution, shall be subject to impeachment; but it *does* provide that 'the governor, and *all other officers under this constitution,*' shall be subject to impeachment. How the term, 'all other officers under this constitution,' can be explained is more than I can see. It is its own explanation—its own definition. As to who is an officer of the United States, or a United States officer—or,

as to who is an officer of the state, or a state officer — is a question about which there may be some doubt, and about which our own supreme court has been called upon to adjudicate; but as to who are *officers under the constitution*, there can be no doubt, especially as to those specifically enumerated therein. All we have to do for information is to turn to that instrument. But, it being conceded that a member of the legislature is an officer under the constitution, it is not necessary, for the purposes of this case, to cite any of its sections for such proof."

But passing this question, and conceding the claim of counsel for the relator, that a member of the legislature of this state is not subject to impeachment, and still we think the judgment of the district court must be sustained.

The constitution declares, article 2, section 8, that "Each house shall be judge of the elections, returns, and qualifications of its own members." This is a grant of power, and constitutes each house the ultimate tribunal as to the qualifications of its own members. The two houses acting conjointly do not decide. Each house acts for itself, and by itself; and from its decision there is no appeal, not even to the two houses. And this power is not exhausted when once it has been exercised, and a member admitted to his seat. It is a continuous power, and runs through the entire term. At any time, and at all times during the term of office, each house is empowered to pass upon the present qualifications of its own members. By section 5 of the same article, acceptance of a federal office vacates a member's seat. He ceases to be qualified, and of this the house is the judge. If it ousts a member on the claim that he has accepted a federal office, no court or other tribunal can reinstate him. If it refuses to oust a member, his seat is beyond judicial challenge. This grant of power is, in its very nature, (and so as to any other disqualification,) exclusive; and it is necessary to preserve the entire independence of the two houses. Being a power exclusively vested in it, it cannot be granted away or transferred to any other tribunal or officer. It may appoint a committee to examine and report, but the decision must be by the house itself. It, and it alone, can remove.

Perhaps also, it might delegate to a judge or other officer outside its own body power to examine and report upon the qualifications of one of its members. But neither it, nor the two houses together, can abridge the power vested in each house separately of a final decision as to the qualifications of one of its members, or transfer that power to any other tribunal or officer. And an act which purported to grant to the district court power to remove from office, must be construed as not embracing members of the legislature; or if its language specifically names, or necessarily includes them, then as to them the act is unconstitutional.

The judgment will be affirmed, at the costs of the relator.

All the Justices concurring.