(Cuyahoga County Common Pleas.)
Delivered June 30, 1900.

## THE STATE OF OHIO v. L. A. RUSSELL.

(1). Under the constitution of the United States, the states are given authority to provide the manner in which the elections for representatives in congress shall be held, but states have no authority to prescribe qualifications for a representative in congress in addition to the qualifications prescribed by art. 1, sec. 2, clause 2, of the constitution of the United States.

(2). Sec. 3022-1, R. S. O., known as the "Corrupt Practices Act", is unconstitutional so far as it relates to the election of members of congress, because it assumes that authority is vested in the state of Ohio to be the judge of the qualifications of a representative in congress, by declaring an election void upon the failure of the representative-elect to meet the qualifications prescribed in. the act, and it assumes that authority is vested in the state of Ohio to be the judge of elections of members of the congress of the United States, and. declares the election void upon the failure of the representative-elect to comply with the provisions of the act.

STONE. J.

This action is brought by virtue of an act of the legislature of the state of Ohio, passed April 9, 1896, entitled "An act to prevent corrupt practices at elections."

The petition is filed by the prosecuting attorney representing the state. And it is alleged that the defendant, being a resident of the state of Ohio and of the 21st congressional district of the state, was a duly and legally nominated candidate for representative in the congress of the United States from the 21st congressional district before the electors of said district at the election held on the 8th day of November 1898. That the defendant failed, within ten days after the holding of said election, or at any other time. to make out or file with the clerk of the county of Cuyahoga, any statement in writing, whatever. re-

"The times, places and manner of holding elections for senators and representatives, shall be prescribed in each state by the legislature thereof; but congress may at any time, by law, make or alter such regulations except as to the place of choosing senators."

This section is the only one in the constitution authorizing the states to exercise any control over federal elections. And it is insisted that the states' authority over congressional elections, or over the conduct of members of congress as such at such elec-

tions, is limited to prescribing the time, place and manner of holding said election, and that the exercise of any authority not clearly included in the plain definition and construction of these words, is null and void.

lating to, or setting out, or containing any of the matters named in section 4 of the act aforesaid, and failed to make out or file a duplicate of such statement with the board of elections, and failed to subscribe or swear to any such statement or duplicate thereof—whereby it is alleged the defendant became liable to the payment of a fine of one thousand dollars to the plaintiff, according to the provisions of section 5 of the act aforesaid—and judgment is asked for the sum named.

The case is before the court on demurrer to this petition, on the ground that the petition does not state facts sufficient to constitute a cause of action.

The defendant's chief contention is that the act under which this action is brought, or rather by virtue of which this action is brought, is unconstitutional in so far as it relates to the nomination and election of members of congress,

Section 1 of the corrupt practices act, or, as it is numbered in the present statutes 3022-1, which is the first section of the original act. provides, among other things, that "No candidate for representative in the congress of the United States * * * shall by himself or by or through any agent or agents, committee or organization, or person or persons whatsoever, in the aggregate pay out, give, or contribute * * * any money or other valuable thing, in order to secure * * * his election, in excess of a sum to be determined upon the following basis: For 5 000 voters or less. $100; For each 100 voters over 5,000 and under 25,000, $1.50; For each 100 votes over 25,000 and under 50,000, $1.00 —and nothing additional for voters over 50,000. Any payment, contribution, or expenditures, or agreement or offer to pay, contribute, or expend any money or thing of value in excess of the limit prescribed by this act * * * is hereby declared to be unlawful and to make void the election of the person making it," etc.

The important feature of this section of the law is to be found in the words last quoted, that is, "Any payment, contribution, or expenditures, or agreement or offer to pay, contribute or expend any money or thing of value in excess of the limit prescribed by ths act * * * is hereby declared to be unlawful and to make void the election of the person making it."

Section 3 is unimportant in the present consideration.

Section 4 of the act, among other things, provides that "Every person who shall be a candidate at any election for any public office which, under the constitution or laws of this state, is to be filled by popular election, or for the office of representative in the congress of the United States, shall within ten days after the election held to fill such office, make out a statement in writing and file the same with the clerk of the county in which he resides, and make out and file a duplicate thereof with the board of officers empowered by law to issue the certificate of election," etc.

Such statement shall set out in detail each and all sums of money contributed, disbursed or expended by him or by any other person by his procurement or in his behalf.

This statement is required by this section to be sworn to. This statement required by section 4, was never made, it is alleged, by the defendant.

The 5th section of the act provides the penalty for a failure to file the statement required by the provisions of the 4th section; that is, any person failing to comply with the provisions of the 4th section of the act, shall be liable to a fine not exceeding $1.000. to be recovered with costs in an action brought in the name of the state by the attorney general or by the prosecuting attorney.

The act further provides that the amount of the fine shall be fixed within the limit of a thousand dollars by the jury, and should be paid into the school fund of the county.

Section 6 provides, among other things, that "No person required by the foregoing sections of this act to file a statement or statements, shall enter upon the duties of any office to which he may be elected, until he shall have filed all statements and duplicates provided for by the foregoing sections of this act; nor shall he receive any salary or emolument for any period prior to the filing of the same."

The sections from which I have quoted, I think, are the only ones that are directly involved in the consideration of this case, although incidentally I shall have occasion to refer to section 7.

It is the contention of the defendant that this act, in so far as it relates to the office of representative in the congress of the United States, is unconstitutional, because, 1st. It prescribes qualifications for a representative in congress, in addition to the qualifications prescribed by article 1, section 2, clause 2. of the constitution of the United States, which is as follows: "No person shall be a representative who shall not have attained to the age of twenty-five years, and been seven years a citizen of the United States, and who shall not, when elected, be an in-

habitant of the state in which he shall be chosen.''

2nd. It assumes that authority is vested in the state of Ohio to be the judge of the qualifications of a representative in congress, by declaring an election void upon the failure of the representative-elect to meet the qualifications prescribed in the act.

3rd. It assumes that authority is vested in the state of Ohio to be the judge of elections of members of the congress of the United States; and, proceeding upon this assumption, declares the election void upon the failure of the representative-elect to comply with the provisions of the act.

Under the constitution of the United States, the states are given authority to provide the manner in which the elections for representatives in congress shall be held, in the words:

It has been repeatedly held that it is not within the power of state legislatures to superadd anything to the qualifications of members of the congress of the United States. The constitution has fixed the provisions as of the qualifications of such members. I have already stated that constitutional provisions—and the inquiry is presented here, then, whether the sections from which I have quoted, in any sense imposes additional qualifications upon candidates or upon members in the congress of the United States. If this is an effort to add qualifications, then the act must fall.

Mr. McCrary, in his work on "Elections", page 204, lays down the familiar doctrine:

"Section 226. The qualifications for federal offices are fixed by the federal constitution or federal law, and the qualifications for state offices, are fixed by state constitutions or state laws. It is not competent for any state to add to or in any manner change the qualifications for a federal office, as prescribed by the constitution or laws of the United States. Nor can the United States add to, or alter the qualifications for a state office, as fixed by the state regulations.

"Section 227. The constitution of the United States fixes the qualifications of representatives in congress in the following words:

"No person shall be representative who shall not have attained the age of twenty-five years and have been seven years a citizen of the United States, and who shall not when elected be an inhabitant of that state in which he shall be chosen.''

"A state law requiring that a representative in congress shall reside in a particular town or country within the district from which he is chosen, is unconstitutional and void.''

There is no provision in the constitution that requires even that a member of congress shall reside in the district in which he is chosen; the constitutional requirement being that he shall be an inhabitant of the state. Many years ago, I think along in the '60's the question came up regarding the election of a congressman in the state of Massachusetts, who was chosen outside of the district in which he lived. The candidate was elected, but his election was approved by the house of representatives. The law in Massachusetts at that time provides a follows:

"For the purpose of electing members of the 38th congress of the United States, and in each subsequent congress, until otherwise provided by law, the commonwealth shall be divided into ten districts, each of which shall elect one representative being an inhabitant of the same, in the manner now provided by law.''

(The words "being an inhabitant of the same,'' being italicized.)

That decision of that case arising under the laws of Massachusetts, was made the subject of a very able article in the American Law Review, volume 3, 1868-69—an able review of the whole subject.

I will read a portion of that article:

"The constitution provides that: 'Each house shall be the judge to the election, returns, and qualifications of its own members.' By what is it to judge? It can only be by the constitution of the United States, the instrument to which it owes its existence and by which its powers and duties are defined. In judging of the 'elections' and 'returns,' it looks to the constitution and finds this provision:

"'The times, places, and manner of holding elections for senators and representatives shall be prescribed in each state by the legislature thereof; but congress may at any time, by law, make or alter such regulations, except as to the places of choosing senators.'

"If the election of a member whose seat is contested, is found to have been held in accordance with its regulations, prescribed by the legislature in virtue of the power thus given, or with the regulations as made or altered by congress by law, and the members to have been returned by a majority of the legal voters composing his constituency, that is, if the electors who have qualifications requisite for electors of the most numerous branch of his state legislature, then he is decided to be entitled to his seat as far as the matter of 'elections' and 'returns' is concerned. Next, as to the qualifications, the house recurs to the constitution but does not find, as in the case of the 'times places, and manner of holding election,' that the qualifications 'shall be prescried in each state by the legislature thereof,'

but it finds these qualifications explicitly set forth in the following sections:

" 'No person shall be a representative who shall not have attained to the age of twenty-five years, and been seven years a citizen of the United States, and who shall not, when elected, be an inhabitant of that state in which he shall be chosen,'—a provision not referring the matter to the state legislatures, but settling it for itself. If no person shall be a representative who shall not have attained to the age of twenty-five years, and been seven years a citizen of the United States, and who shall not, when elected, be an inhabitant of that state in which he shall be chosen, it follows, by a familiar rule in interpretation, that any person who has attained the age of twentyfive years, been seven years a citizen of the United States, and who is, at the time of his election an inhabitant.of the state in which he shall be chosen, may be elected a representative.

"Mr. Crittenden says, in his speech in the senate, March 5, 1856, on the Trumbull case, 'The very enumeration of these qualifications excludes the idea that they intended any other qualifications. That is the plain rule of ordinary construction.'

"Senator Foote, of Vermont, in his speech on the same case, says, 'It comes within a familiar principle, that the enumeration of certain requisites of qualifications, or of certain disabilities to election,is the negative of all others, and is equivalent to a positive prohibition of all authority to impose any others.'

And Judge Story, in his 'Commentaries on the Constitution,' section 625, says, 'It would seem but fair reasoning upon the plainest principles of interpretation, that when the constitution established certain qualifications, as necessary for office, it meant to exclude all others, as prerequisites. From the very nature of such a provision, the affirmation of these qualifications would seem to imply a negative of all others. * * * A power to add new qualifications is certainly equivalent to a power to vary them.'

And finally, Hamilton, in the 'Federalist,' No. 52, speaking of the constitutional qualifications says, 'Subject to these reasonable limitations, the door of this part of the federal government is open to merit of every description, whether native or adopted, whether young or old, and without regard to poverty or wealth, or to any particular profession of religious faith.' "

The reference made to the Trumbull case is worthy of a moment's further consideration.

Mr. McCrary, in section 228, of his work on Elections, says:

"The constitution of Illinois, of 1846, provided as follows:

'The judges of the supreme and circuit court shall not be eligible to any other office or public trust of profit in this state, or the United States during the terms for which they are elected nor for one year thereafter. All votes for either of them for any elective office, (except that of judge of the supreme courts) given by the general assembly, or the people shall be void.'

"The house of representatives held that this clause of the constitution of Illinois, so far as it related to the election of member of congress, was void, because in conflict with the federal constitution,and also because it was an unauthorized attempt of the state of Illinois to fix or to change the qualifications of representatives in congress.

Mr. Marshall and Mr. Trumbull, of Illinois were elected representatives in the 34th congress. .

They had previously been elected, representively, judge of the supreme and circuit court of that state,for terms which had not expired. This was held to be no objection to their holding the office of representative in congress."

I will refer to another case which the defendant or counsel for defendant has very full and exhaustively cited in his brief. This case was decided in the 42nd congress, and shows clearly the practice of the house of representatives in like cases.

A statute of Alabama was drawn in question, which impowered a board of supervisors of elections to hear proof upon charges of fraud, and upon sufficient evidence, to reject illegal and fraudulent votes cast, "which rejection so made as aforesaid" the statute declared, should be final unless appeal should be taken within ten days to the probate court. The house in that case said, it is not competent for the legislature of a state to declare what shall or shall not be considered by the house of representatives, to show the actual vote cast for a member of congress,much less to declare that the decision or a board of county canvasssers, rejecting a given vote, shall estop the house of representatives from further inquiry. The fact that no appeal was taken, does not preclude the house from going behind the returns and considering the effect of the evidence presented.

James Madison,in discussing the constitutional provision as to the qualifications for a member of the house of representatives in No. 52 of the Federalist, says:

"It has been observed that under the reasonable qualifications established by the constitution, the door of this part of the federal government is open to merit of every description."

Mr. Justice Story in his work on the

Constitution, following section 623, wherein he quotes Mr. Madison, says:

"The question is whether the states can superadd any qualification to those prescribed by the constitution of the United States.

If a state legislature has authority to pass laws to this effect, they may impose any other qualifications beyond those prescribed by the constitution, however inconvenient, restrictive, or even mischievous they may be to the interests of the union. In short, there is no end to the varieties of qualifications, which, without insistin. upon extravagant cases, may be imagined.

"A state may, with the sole object of dissolving the union, create qualifications so high, and so singular, that it shall become impracticable to elect any representative.

"It would seem but fair reasoning, upon the plainest principles of interpretation, that when the contsitution estab lishes certain qualifications necessary for office, it meant to exclude all others as prerequisites.

From the very nature of such a provi sion, the affirmation of the qualifications. would seem to imply a negative of all others. * * * The house of representatives seems to have acted upon this interpretation and to have held that the state legislatures have no powers to prescribe new qualifications, unknown to the constitution of the United States."

Mr. Cooley in his "Constitutional Limitations," takes the same view of the case, in speaking of the construction to be given the constitution, and, on page 78 of his work, says:

"When the constitution defines the circumstances under which a right may be exercised, or a penalty imposed, the specification is an implied prohibition against legislative interference to add to the condition or extend the penalty to other cases. On this ground it has been held by the supreme court of Maryand, that where the constitution defines the qualifications of an officer, it is not in the power of the legislature to change or superadd to them, unless the power to do so, is expressly or by necessary implication conferred by the constitution itself."

An interesting case is reported in 20 Kan. Rep., 551, State of Kansas ex rel. v. J. S. Gillmore. The state legislature of Kansas passed a law containing this provision:

"Any state, district, city, county, or township officer of this state for whose removal from office by impeachment there is no provision, (who) shall in any public place within the state be in a state of intoxication produced by a s'rong drink voluntarily taken, such officer shall be deemed to have com mitted an offense against public morals, and on conviction thereof shall be adjudged of have forfeited his office, and his said office shall thereupon be declared vacant by the court trying the case."

One of the members of the general assembly, it seems was prosecuted for a violation of this act.

The case was decided by Justice Brewer, now one of the justices of the supreme court of the United States.

"The constitution declares article 2, section 8 that, 'Each house shall be judged of the elections, the terms and qualifications of its own members.' This is a grant of power, and constitutes each house the ultimate tribunal as to the qualifications of its own members. The two houses acting conjointly do not decide. Each house acts for itself and by itself;and from its decision there is no appeal, not even to the two houses. And this power is not exhausted when once it has been exercised, and a member admitted to his seat. It is a continuous power, and runs through the entire term. At any time and at all times during the term of office each house is empowered to pass upon the present qualifications of its own members."

Without spending further time upon it, it is sufficient to say that he held this act was void because it was in conflict with the constitution of that state which provides that the general assembly shall be the judge of the qualifications of its own members.

This sufficiently illustrates, I think, the trend and holding of courts where this question is involved, although I might refer to many other cases of the same general character.

The question, then arises, under this act, has the legislature here undertaken to impose additional qualifications?

It is due the legislature to say, that this act was not passed without having in mind at least, this precise question, for it is to be observed that in section 7, the section which makes provision for preferring charges against public officers for violation of this law, with a view to ousting them from office to which they have been elected, they took care to exclude from the provisions of that section "members of the general assembly, and representatives in the congress of the United States," recognizing thereby the force and effect of the constitutional provisions to which I have referred.

While this section of the law has no application to members of the general assembly or representatives in the congress of the United States, it is certainly clear that candidates for representatives in the congress of the United States are included within the provisions to which I have called attention, namely sections 1, 4, 5 and 6.

So the inquiry is, whether in these respects the legislature has exceeded its power under the constitution, and whether there is here, added qualifications to the office.

It is to be noted, in the first place, that under the first section, the statute declares that if a candidate exceed in his expenditure, the sum of money authorized to be expended that act shall make void the election of the person making such expenditure.

This would certainly seem to impose conditions and qualifications upon a candidate, that probably will not be found in any other state in the union.

I say that without any careful examination of the laws of other states. It may be that there is an act somewhat similar in some other states, but not generally—and that I think, strikes right at the main question in the case: namely, whether you may impose upon the candidate for the office certain conditions, obligations and qualifications upon his election, that do not obtain everywhere in the United States, and obtain by virtue of the constitution of the United States.

I am of opinion that these sections of the law seek to impose additional qualifications and that, being so, renders the act, in so far as it relates to members of the congress of the United States, unconstitutional and void. I am of the opinion that the same principle is involved in section 6, when it declares that "no person required by this section to file statement or statements, shall enter upon the duties of any office to which he may be elected, until he shall have filed a statements and duplicates provided for by the foregoing sections of this act; nor shall he receive any salary of emolument for any period prior to the filing of the same." That is a condition added. It certainly can not be competent for the legislature of the state to declare that a candidate for the congress of the United States, after he has received the requisite number of votes for his election and which entitles him to hold the office of representative in the congress of the United States, can not enter upon that office until he files some statement or statements with some office. That is a qualification not within the power of the legislature to establish.

The supreme court of Ohio in the case of Mason v. The State ex rel, McCoy, 58 Ohio St., 30, held, that there was nothing in this act that was in conflict with the constitution of this state.

The syllabus of the case is as follows: "1. The provisions of the act of April 8, 1896, entitled 'An act to prevent corrupt practices at elections,' (92 O. L., 123) which direct the commencement of an action by the prosecuting attorney at the instance of the attorney general, for the purpose of inquiring into the title to an office of a successful candidate who is charged with the acts made unlawful by any law of this state, and which authorizes the court, upon finding any of such charges true, to render judgment declaring the election void, the office vacant, and excluding the incumbent therefrom, are not in conflict with the constitution, and are valid."

That was a prosecution against one Mason, elected to the office of probate judge in this state, for violating the provisions of section 7 of the act under consideration, and a judgment of ouster was rendered against him in the circuit court. It does not appear that any federal question was raised in this case; nowhere in the briefs of counsel or in the decision by Judge Spear is there any reference made to the constitution of the United States or of the validity of the act in respect of the election of United States officers. While the act, therefore, is perfectly valid in so far as it has application to state officers, elective under the laws and constitution of the state, I am clearly of opinion that in so far as it undertakes to create qualifications as to representatives in the congress of the United States, and to impose upon such candidate or member special and unusual conditions in the nature of qualifications, to that extent that law is violative of the provisions of the constitution of the United States. It is equally true, in my judgment, that if the legislature had no power to impose these conditions it was without power to impose a penalty for the violation of them.

The demurrer to this petition is, therefore, sustained.

Harvey Keeler, County Prosecutor, for Plaintiff.

L. A. Russell, for Defendant.

---

(Superior Court of Cincinnati.)
Special Term, September, 1900.