[No. 4579.]

MILLS, SECRETARY OF STATE, v. NEWELL.

**Elections—State Senators—Redistricting State—Vacancies—Jurisdiction—Official Ballots.**

Where by act of the legislature the state was reapportioned into senatorial districts, fixing the number of senators for each district, and the act did not provide in which districts senators should be elected at the next general election, but did provide that the act should not work the removal of any senator from office for the term for which he may have been elected, and it appears that if senators are elected from each district, the newly elected senators together with the hold over senators will exceed by one the number limited by the constitution, neither the secretary of state nor the courts have authority to determine which district shall not be entitled to elect a senator, but that question can be determined only by the senate itself. And the secretary of state has no authority or right to refuse to place upon the official ballot the name of any candidate for senator on the ground that no vacancy exists in the district in which he is a candidate.

*Upon Review from the District Court of Arapahoe County.*

Mr. C. C. POST, attorney general, and Mr. CLAY B. WHITFORD, for petitioner.

Mr. H. J. HERSEY, for respondent.

Mr. JUSTICE GABBERT delivered the opinion of the court.

The question involved is the right of Mr. Newell to have his name appear upon the official ballots as a candidate for state senator from the 26th senatorial district. He has been regularly nominated for the office named, and has tendered the secretary of state his certificate of nomination, which is conceded to be regular in all respects. The latter refused to receive and file this certificate for the reason that, according to his construction of the apportionment act of 1901, no vacancy exists in the office of state senator for the 26th district, or that this district is not entitled to elect a senator at the next general election, and stated that he would not certify the name of respondent as a candidate for the office in question. Based substantially upon these facts, Mr. Newell commenced an action in the district court of Arapahoe county against the secretary of state, to compel him to receive and file the certificate of nomination tendered, and also to certify his name to the several county clerks of the counties comprising the 26th senatorial district as a candidate for the office of state senator. Judgment was rendered in favor of Mr. Newell, and the secretary of state has instituted proceedings here to review that action. It appears that if a senator is elected from the 26th district, and senators are also elected from the candidates in the other districts whose certificates of nomination have been received and certified, or will be certified by the secretary of state, to the proper county clerks, that it will result in electing eighteen senators, who, if admitted, would, with the hold-overs, constitute the senate a body in excess of the constitutional number by one. No claim is made by either party that the apportionment act of 1901 is invalid. It is unnecessary to state that act in full, but for the purposes of this action, it is sufficient to say that it re-districts the state into senatorial districts, designates the num-

ber of senators to which each district is entitled, does not expressly state what districts shall elect senators this fall, but does provide that nothing in the act shall be construed to work the removal of any senator from office for the term for which he may have been elected.

The foregoing preliminary statement fairly presents the questions necessary to consider in so far as they are argued by counsel for the secretary of state. They contend that under the apportionment act of 1901 no senator is to be elected from the 26th district at the next general election, and hence the refusal of the secretary of state to receive and file the certificate of nomination or certify the name of Mr. Newell to be printed upon the official ballots, should not be disturbed. The only question as to the apportionment act which either party raises is the one of vacancy in that district, which necessarily implies that the only controversy between them in this respect is, which one of the several districts claiming the right to elect senators at the next general election, including the 26th, is asserting a right to elect one which is not entitled to elect at that time? This is a question which the senate must determine for itself, and its authority to do so cannot be infringed. Our constitution expressly provides that each house of the general assembly shall judge of the election and qualification of its members— § 10, art. V. The power thus vested is exclusive, and cannot be exercised by any other tribunal. *Hughes v. Felton,* 11 Colo., 489; *State v. Gilmore,* 20 Kan., 551.

The secretary of state bases his action upon the ground that there is no vacancy in the 26th district. On the strength of this construction of the apportionment act of 1901, he takes the steps which will result in the election of the statutory number of senators

from other districts, to the exclusion of the 26th. The effect of this action is a declaration on the part of the secretary of state that all the districts claiming the right to elect senators at the next election are entitled to exercise it, except the 26th. This is clearly a usurpation of authority expressly inhibited by the fundamental law, because he has assumed indirectly, though arbitrarily, to determine the right of some one to a seat in the senate, in the face of the constitutional provision that that body has the exclusive authority to determine the election and qualification of its own members. In other words, by his action he not only assumed to determine that those elected whose certificates of nomination he has filed will be entitled to seats in the senate, but has taken the steps which will prevent the election of a senator in the 26th district, and thus effectually deprives some one who would otherwise be elected from that district of the privilege of having his rights to a seat determined by that body, but, in addition, has assumed to deprive the senate of its prerogative to judge of the election of its own members, and the electors of the 26th district of the constitutional guaranty to have their right to elect a senator determined by the only forum clothed with that power.

In view of the constitutional provision above referred to, if this court should undertake to decide whether the secretary of state was right or wrong in his construction of the apportionment act, it would also exercise an authority which it does not possess because it would be an attempt to determine questions which the senate alone has jurisdiction to settle. Aside from these considerations, if it could be successfully urged that the inhibition of the constitution is not controlling in this case, it is not amiss to add, that no harm can ever come of permitting the

people to vote upon any question which they may desire to have submitted to their suffrages. If the issue thus presented is defeated, it is then settled; if not, tribunals are provided for determining the validity of elections, and unless the people are permitted to vote in the first instance, the opportunity for such determination could never be presented. If ballots could be prepared and distributed as under the law in force prior to the adoption of the present law upon that subject, no one would question the right of the electors of the 26th district to vote for candidates for the office of state senator from that district at the next election. The present law has not abridged that right, nor has it vested any officer or tribunal with authority to prevent its exercise. Inasmuch as Mr. Newell has been regularly nominated, he has the undoubted right to have his name submitted to the electors of the 26th district upon the official ballots as a candidate for the office of state senator from that district, so that if he should receive the requisite number of votes, he will be armed with the proper credentials which will enable him to present his claims to a seat in the next general assembly to the body which, alone, has the authority to determine the question upon which the secretary of state bases his action.—McCreary on Elections, 3rd ed., § 350; 4th ed., § 385; *O.'Ferrall v. Colby,* 2 Minn., 148.

The judgment of the district court is affirmed.

*Affirmed.*

CHIEF JUSTICE CAMPBELL concurring.

I fully concur in the opinion of Mr. Justice Gabbert. The ground upon which he bases his conclusion is impregnable, and is so clearly and concisely stated that amplification would serve to obscure, rather than to elucidate, the controversy. The opinion speaks for itself, and it would seem that there

ought to be no doubt, either as to the scope of the decision or the principle upon which it proceeds. But in the dissenting opinion an interpretation is put upon the opinion of the majority, and a theory selected for them, which, as yet, they have not announced, and for which they decline to act as sponsors. To prevent any misconception of their position, this concurring opinion is written.

In an opinion the statement of a rule in general terms must be taken in connection with the particular facts of the case. In the determination of a pending controversy disclosing certain facts it is not a safe practice, nor do courts usually indulge therein, to anticipate and decide other cases that may arise exhibiting an entirely different state of facts, and to which other legal principles may apply. It will be time enough, therefore, to determine the duty of the secretary of state when the general assembly enacts a law expressly providing that there shall be no vacancy in a given senatorial district at a given election. It has not so declared in the apportionment act of 1901. It did so declare in the act of 1891—Session Laws 1891 22, 24. In the act of 1891 the general assembly very wisely specified, as should have been done in 1901, in what senatorial districts elections should, and in what districts elections should not, be held at the next general election after the act took effect. But if a case such as suggested in the dissenting opinion should be presented to the court, it may not be inappropriate to observe that we would then have, in advance of the election, an authoritative declaration, in the form of a statute, by the general assembly itself, with which body rests the sole power of judging of the election and qualification of its members, that in the districts wherein it had said elections should be held, those duly elected thereat would be entitled to seats at its ensuing session. But such supposed case is so rad-

ically different from the one we are now considering
that we need not pause to inquire what would be the
duty of the ministerial officer charged with the exe-
cution of the legislative mandate.

The condition which now confessedly confronts
us is that if elections are held in all the senatorial
districts created by the apportionment act which are
not now fully represented, those elected therefrom,
together with the hold-over senators who cannot be
displaced, will, if all are seated, constitute the senate
a body of 36 members, whereas, under the constitu-
tion, it is limited to 35.  Mr. Justice Gabbert has
demonstrated that neither the secretary of state nor
the courts can say what senatorial district shall be
disfranchised.  Mr. Justice Steele thinks, as I under-
stand it, they may determine in which district a va-
cancy exists.  If the court has such power then, if the
condition was that like provision had been made for
the election of a number of senators who, together
with the hold-overs, would give a senate of 34 mem-
bers, it would have power to add one so as to make
good the constitutional number.  It would have the
same power to add one to, as it would have to sub-
tract one from, the number provided for by the legis-
lature.  In neither case has a court such power, nor
could that power be conferred upon it.  To attempt
to exercise it would be a flagrant usurpation of juris-
diction which the general assembly alone possesses,
and likewise an exhibition of judicial legislation
without a parallel.

Courts cannot thus make laws by arbitrarily
eliminating from invalid enactments the clauses
which produce the invalidity.  Neither can they give
life to an act which is defective because of the absence
of provisions which the legislature might have, but
did not, put into it, by injecting into the statute the
omitted provision.

One or two illustrations will show the futility, as well as the lack of power, of tribunals other than the general assembly assuming under the election act and in proceedings thereunder the power contended for. Suppose the secretary, as he has done, determines that there is no vacancy in the 26th district, and upon a review of his decision this court determines that there is. In the 3rd district in which nominations have been certified we hold, in a contest, that there is no vacancy. In the first case we order the secretary to certify the nomination which he rejected, and in the second, to recall and cancel the one which he accepted. When the senate meets, it says that no vacancy existed in the 26th district, in which an election was held, but that a vacancy did exist in the 3rd, where we refused to allow an election, and also in the 4th district, which was prevented from holding an election by an order of this court made in a third contest. The court could not, if it would, enforce its own orders, and the senate's subsequent decision could not be nullified by us, but a grievous wrong would be done somewhere that could not be wholly rectified.

Again, suppose that Mr. Newell's nomination had been received, and a nominee in some other district had filed an objection to its certification on the ground that there was no vacancy in the 26th district. If the secretary of state has the power here asserted and sustains the objection, would he not indirectly, but none the less conclusively, determine which claimant had the right to a seat in the next senate? He certainly could not do this in a contest between rival claimants, and he cannot of his own motion do so. If such exclusive power is not vested in the ministerial officer, or the courts, and the legislation has not assumed to confer it, why should they arbitrarily exercise it?

If the reasons given by Mr. Justice Gabbert for

affirming the judgment of the district court be not ample, there are others which might be assigned, but which we think there is no necessity for mentioning. There is, however, one matter, though technical in the sense that it does not go to the merits, which, in the opinion of the majority, renders the contention of the secretary of state wholly untenable. The secretary has no power whatever in respect to certifying nominations except what the so-called election act gives, and he is denominated by that act a ministerial officer.'' Session Laws 1891, p. 148, § 13, as amended by Session Laws 1897, 155. The act furnishes a method of procedure complete in itself for determining all controversies that arise under it, and only such matters as the act provides for can be determined in the proceedings instituted thereunder. The subject matter of the pending controversy is not within the purview of the act. But if it was, the proceeding is a special proceeding, and the method of procedure prescribed must be followed, and there is no pretense that it was observed here. The ministerial officers designated are given certain powers and charged with certain duties in relation to the preparation of the official ballot, and it is for that purpose, and that only, that such powers have been conferred and duties imposed. All certificates of nomination which are in apparent conformity with the provisions of the act shall be deemed valid, unless objection thereto shall be made in writing within three days after filing the same. Though the secretary refused to file the certificate in question, yet since the parties presenting it did all that was possible for them to do in complying with the provisions of the statute, the law regards the certificate as having been filed. This being so, and the statute expressly declaring that it shall be deemed valid unless objected to, and no objection at all having been made at any time, the sec-

retary in the absence of such objection is not, by the statute—and that is the sole source of his power—vested with authority to refuse to certify the nomination because he has some objection to it for some substantial reason. He may, of his own motion, refuse to file a certificate, on some formal ground, but if it is, as expressed in the statute, "in apparent conformity with the provisions of this act," as this certificate admittedly is, the secretary may not, of his own motion, and in the absence of some objection based upon matter of substance, refuse to certify the nomination.

Mr. Justice Steele dissenting.

I disagree with my associates in the disposal of this case. The judgment is in nowise based upon the provisions of the apportionment act. My associates are of opinion that this court has no authority to read and construe the act for the purpose of ascertaining whether a vacancy exists in the 26th district, and that even though it can be ascertained from the provisions of the act that no election should be held in the 26th district in the year 1902, it is nevertheless the duty of the secretary of state to certify the nomination; and their opinion is predicated upon the theory that if the secretary of state were to refuse to file a certificate of nomination of candidates in districts where by the plain mandate of the law no election is to be held, or if this court were to direct the secretary of state to refuse to file such certificates, the secretary or this court would violate that provision of our constitution which declares that each house of the legislature "shall judge of the election and qualification of its members."

This, I think, is an erroneous construction of our constitution. I deem it to be the duty of the secretary of state, when the legislature has indicated that no

election shall be held in certain senatorial districts for a certain year, to refuse to receive certificates of nomination from such districts, and the duty of this court to uphold that official in thus executing the will of the legislature.

I am of opinion that we should ascertain from the apportionment act whether or not there is a vacancy in the 26th senatorial district. If, after reading the act, we are of opinion that a vacancy exists, we should direct the secretary of state to file the certificate of nomination and certify the names of candidates to the various county clerks; if, on the other hand, we are of opinion that no vacancy exists, we should direct the secretary of state to refuse to file the certificate of nomination.

I should not regard the act of this court in directing the secretary of state to refuse to file a certificate of nomination in districts where no vacancy exists as an interference with the right of the legislature to judge of the election of its members, but should regard such action as a proper exercise of the jurisdiction of this court in ascertaining the true meaning and intent of the legislature (and not of the senate only), as expressed in the apportionment act. If, as stated in the opinion, we must ignore the provisions of the statute and arm Senator Newell with the proper credentials to enable him to present his claims to the senate of the next general· assembly, whether a vacancy exists in the 26th district or not, it follows that we must arm every other candidate with credentials and that there may be forty persons with such credentials presenting themselves as senators of the next general assembly, notwithstanding the constitutional membership of the senate is thirty-five.