## Ferguson, Commissioner of Agriculture, et al. v. Chandler, Governor, et al.

(Decided June 23, 1936.)

(As ·Modified on Denial of Rehearing Dec. 15, 1936.)

S. H. BROWN for appellants.

RICHARD PRIEST DIETZMAN for appellees.

OPINION PER CURIAM.

This action was filed under section 639a-1 et seq., Civil Code of Practice, to have defined and declared the duty, power, and right of the state board of agriculture and of the commissioner of agriculture in respect of, and over, the Kentucky State Fair.

The trial court separated and declared the duty, power, and right of the state board of agriculture, and also those of the commissioner of agriculture, over the Kentucky State Fair, and entered a judgment accordingly. From so much of it as limits the commissioner's expenditures for clerical hire in the central office to $1,200 per annum, and as decreed that the state board of agriculture had complete control and management of the state fair, including the right to appoint and remove at its pleasure all employees necessary for the operation of the state fair, and as declared that the state board of agriculture could conduct and manage the fair as it saw fit, independent of the will and wish of the commissioner of agriculture, except as chairman of the board, the commissioner of agriculture appeals.

As the premise that the trial court erred in so decreeing, the commissioner is here insisting that "he is a constitutional officer and as such, is the head of the department of agriculture, labor and statistics, and has sole authority to employ and discharge all persons required to carry on the various activities of that department, including the operation of the Kentucky State Fair."

As statutory authority for this insistence, he quotes the first sentence of section 31, Kentucky Statutes, which reads:

"A bureau of agriculture, labor and statistics is established, and shall be under the management of an officer, who shall be known as the commissioner of agriculture, labor and statistics."

On this quoted sentence of the statute, he predicates the argument that "the General Assembly has never vested the board of agriculture with either the power to employ or the power to discharge any employees of the department of agriculture."

To substantiate this argument, he quotes section 37-8, Kentucky Statutes, which reads:

"*Board to advise with commissioner of agriculture.* —This board, in addition to duties specified, shall act as an advisory board to the commissioner of agriculture, labor and statistics, and shall aid him

in the distribution of seed, as provided by law, in the collection of information concerning crops, and in the promulgation of industrial information generally.''

It is his insistence that this section ''clearly limits the power of the Board to an advisory capacity.''

The question to be ascertained and determined is, Does the state board of agriculture or the commissioner of agriculture, under the Constitution and the Statutes, constitute the governing authority of the Kentucky State Fair, including the power to appoint and remove its employees, and the right to provide by by-laws for the regular meeting dates of the state board of agriculture?

The duty is upon us to review the contentions of the commissioner of agriculture and the sections of the statutes upon which he relies, conjunctively, with all statutes in pari materia and section 91 of the Constitution.

Prior to the adoption of our present Constitution, the office of the commissioner of agriculture was statutory. By section 91 of this instrument it became a constitutional office, ''the duty of which,'' in the language of the Constitution, ''shall be such as may be prescribed by law.''

The bureau of agriculture was created by an act approved April 24, 1882. (Laws 1881-2, c. 1378 amending Laws 1875-76, c. 1000). The first sentence of section 31, Kentucky Statutes, so confidently relied on by the commissioner of agriculture, is the first sentence in section 1 of an act approved April 2, 1892 (Acts 1891-92-93, c. 16). This section provided for the appointment of a commissioner of agriculture until his election in November, 1895, and the qualification of his successor thereafter, on the first day of January, 1895. Section 3 of the same act defined the duties of the bureau of agriculture, labor, and statistics; sections 5 and 6 prescribed the duties of the commissioner of agriculture; and section 7 contained this clause: The Commissioner shall be chairman of the Bureau of Agriculture, Labor and Statistics with the ''power to call meetings and adjourn the same,'' and ''the duties of said board * * * shall be merely advisory.'' Section 9

thereof authorized the commissioner to expend such sums out of the appropriation made for the bureau for the purposes therein set out, as he might deem necessary. Section 11 reads:

"The Commissioner is allowed a clerk or clerks, to be selected by himself, the salary of whom shall not exceed in the aggregate twelve hundred dollars per annum."

Section 2 of an act approved March 21, 1906, c. 90, p. 367, now section 37-2, Kentucky Statutes, "created a state board of agriculture, which shall succeed to all the powers, rights, privileges and property of the present state board of agriculture, forestry and immigration, to consist of nine (9) members, namely, the commissioner of agriculture, labor and statistics, ex-officio chairman; the director of the Kentucky experiment station at Lexington, Kentucky, an ex-officio member and vice-chairman, and one citizen from each of the appellate court districts in the state." Section 4 defined the duties of the board and conferred on the commissioner power to call and adjourn its meetings, both regular and called. It contained this provision:

"The moneys expended by the said board shall have the approval of a majority of the board."

Section 5 made it the duty of the commissioner, with the approval of the board, to hold in each county of the state annually, farm and industrial institutes. Section 6 further defined the duties of the commissioner. Section 8 thereof reads:

"This board, in addition to duties specified, shall act as an advisory board to the commissioner of agriculture, labor and statistics, and shall aid him in the distribution of seed, as provided by law, in the collection of information concerning crops, and in the promulgation of industrial information generally."

This section of the act is now section 37-8, Kentucky Statutes. And when it is read in connection with the preceding sections of the act of which it is a part, it is patent that it adds to the duties of the board, as they are set forth in those sections, the specific duties narrated in section 8, (37-8); and it was not intended to, and does not, concern or deal with or refer to the

Kentucky State Fair, or the board's or the commissioner's authority, duties, or rights appertaining thereto. Section 11 of the act of 1906, provided:

"The commissioner of agriculture, labor and statistics may appoint a clerk and stenographers of the board, subject to the approval of said board. The clerk shall be an able, well qualified man for the place, and shall give his entire time to the services of the state. He may act as an assistant commissioner or as an instructor at the county institutes, * * * or perform other duties assigned him by the commissioner."

Section 11 of the act is now section 37-11, Kentucky Statutes.

An act approved March 24, 1912, c. 82, p. 241, repealed section 2 of the act approved March 21, 1906, to which we have already adverted, and by section 1 thereof created a state board of agriculture and provided that it should "succeed to all the powers, rights, privileges and property of the present State Board of Agriculture, Forestry and Immigration, to consist of nine (9) members," as they are now named in section 37-2, Kentucky Statutes; and further provided that the commissioner of agriculture, labor, and statistics, shall be ex officio chairman of the board of agriculture thereby created. Section 2 of the act of 1912 provided:

"The Board of Agriculture * * * shall be a body corporate under the corporation name of the State Board of Agriculture, and as a corporation shall have the power to sue and be sued, to plead and be impleaded, to contract and be contracted with, and possess all the immunities, rights, privileges and franchises usually attaching to corporate bodies."

Section 3 thereof contained this provision:

"The Commissioner, as Chairman of the Board, may and at the request of five members shall call its meetings and the Board shall have power to adjourn any meeting to such time and place as may be determined. Five members shall constitute a quorum for the transaction of business, and may call the Board together for the transaction of business, in

case of the refusal of the Chairman, upon the request of five members, to call it."

These sections of the act of 1912 are now sections 37-2 to 37-4, Kentucky Statutes. An act approved March 14, 1924, c. 68, p. 160, repealed sections 1 to 10, inclusive, of the act of 1912, and also certain sections of the act of 1912. See section 33a-1, Kentucky Statutes. An act of 1902, c. 112, p. 243, provided for the "improvement and development of the live stock, agricultural, and kindred interests by the establishment and maintenance of a State Fair." Section 2 thereof conferred the management and control of a state fair on the board of directors of the Kentucky Live Stock Breeders' Association, a corporation organized and existing under the laws of the state of Kentucky, and their successors in office. It appropriated for the payment of premiums of the state fair by the directors of the Kentucky Live Stock Breeders' Association, the sum of $15,000. The constitutional validity of the appropriation was sustained in Kentucky Live Stock Breeders' Association v. Hager, Auditor, 120 Ky. 125, 85 S. W. 738, 27 Ky. Law Rep. 518, 9 Ann. Cas. 50. The Kentucky Live Stock Breeders' Association in virtue of the authority conferred by the act of 1902, by and through its board of directors, exercised the exclusive power and right to conduct the Kentucky State Fair, until an act approved March 21, 1906 (Acts 1906, c. 99) was amended and re-enacted, by which an annual state fair was created, to be known as the Kentucky State Fair. Section 2 thereof in part reads:

"The management and control of this State Fair shall be in the hands of the State Board of Agriculture, Forestry and Immigration."

The remainder of section 2, and sections 3-7, following it, specifically set out the authority and prescribed the duties of the state board of agriculture, forestry, and immigration, appertaining to the Kentucky State Fair. These sections are now sections 4618b-2 to 4618b-7, Kentucky Statutes. The act of 1912, c. 10, p. 84, secs. 1 and 2, now sections 4618c-1, 4618c-2, Kentucky Statutes, further enlarged the authority and duties of the state board of agriculture over the Kentucky State Fair. An Act of 1920, c. 12, p. 26, secs. 1 and 2, now sections 4618f-1, 4618f-2, Kentucky Sta-

tutes, again enlarged the authority and power of the state board of agriculture, relating to the state fair. An act approved March 3, 1928, c. 4, p. 9, now secs. 4618g-1, 4618g-2, Kentucky Statutes, expressly conferred on the state board of agriculture the authority and power therein set forth.

The Legislature by chapter 2, Acts of 1934, p. 5, approved March 26, 1934, endeavored to vest in the commissioner of agriculture and the state board of agriculture, jointly, the "exclusive jurisdiction, supervision and control of the Kentucky State Fair and its grounds." This is the character of jurisdiction, supervision, and control the commissioner is insisting now belongs to him by virtue of the Constitution and statutes existing at the time of the approval of the above act. If the act, supra, were in force and effect, plainly it would authorize and support the theory that his and the board's management and control of the fair were at least joint. But it was not signed by the presiding Lieutenant Governor; therefore, on the authority of Kavanaugh v. Chandler, Lieut. Gov., et al., 255 Ky. 182, 72 S. W. (2d) 1003, 95 A. L. R. 273, it is constitutionally invalid.

The fact that the Legislature passed this act signifies that at the time it did so its conclusion was there was no existing statute giving to the commissioner the authority over the Kentucky State Fair which the language conferred on him and which he now asserts. The passing of the act with its context demonstrates the correctness of our construction of the statutes now in existence relating to the commissioner of agriculture and the Kentucky State Fair, as herein expressed.

Another act of 1934, effective date, July 1, 1934, c. 155, article 8, secs. 1, 2, pp. 679, 692, now sections 4618-16, 4618-17 (Baldwin's Supp. 1934) provides that "the Department of Agriculture, Labor and Statistics shall consist of the Commissioner of Agriculture, Labor and Statistics, the Board of Agriculture and such subordinate divisions as may from time to time be established under the provisions of this Act. It shall have and exercise all of the administrative functions of the State in relation to the promotion of the interest of Agriculture in all of its branches, * * * the Commissioner of Agriculture, Labor and Statistics shall also

exercise all the powers, duties and functions now vested in his office by the Constitution and laws of the State.''

"The State Board of Agriculture as now constituted shall be continued, but is hereby attached to and made a part of the Department of Agriculture, Labor and Statistics. It shall continue to manage and control the State Fair and to perform such other functions as provided by law."

Chapter 88, session Acts of 1916, p. 635, section 4618e-1, 4618e-2, Kentucky Statutes, gave to the commissioner of agriculture the power of arrest and the same right to execute process as that belonging to the sheriffs in this commonwealth, but limited his right to exercise these powers to the grounds of the Kentucky State Fair, where he and as many deputies as he may deem necessary shall maintain order and preserve the peace. It imposed upon him the duty to execute bond in the sum of $5,000 for the faithful performance of these duties by himself and deputies.

It is plain that whilst the commissioner is a constitutional officer, the Constitution neither defines nor prescribes his powers and duties. It expressly provides that they "shall be such as may be prescribed by law." Therefore, the statutes enacted in pursuance to this section of the Constitution must be looked to in order to ascertain and determine his powers over, and his duties appertaining to, the Kentucky State Fair.

Our resume of the statutes plainly shows that the authority of the commissioner of agriculture, as to the Kentucky State Fair, is to function (a) only as ex officio chairman of the state board of agriculture; (b) he "may appoint a clerk and stenographers of the board subject to the approval of the board"; and (c) exercise on the state fair grounds only the power of arrest and the right to execute process by himself and deputies.

It should be noted that the first sentence in section 31, Kentucky Statutes, and the provision in section 37-8, Kentucky Statutes, were in operation during the period of time the management and control of the Kentucky State Fair were actually exercised under the act of 1902 by the Kentucky Live Stock Breed-

ers' Association, a private corporation; and during its reign and government of the state fair, neither the bureau of agriculture, named in sections 31 and 37-8, nor the commissioner of agriculture, assumed or exercised, at all, any authority or power over the Kentucky State Fair, by virtue of either sections 31 or 37-8, or any other provision of the statutes.

It should be conceded that sections 31 and 37-8 cannot operate to abridge, alter, change, modify, or affect the act of 1906, sections 4618b-1, 4618b-2, Kentucky Statutes, creating the Kentucky State Fair, and expressly conferring upon the state board of agriculture the management and control thereof.

The act of 1906 was a new law covering the whole of the subject of the Kentucky State Fair, and the state board of agriculture.

> "The well-settled rule of statutory construction is that, where a new law covers the whole subject of an old one, its effect is to repeal the prior law, as the act of the Legislature is presumed to be passed by it deliberately and with knowledge of then existing laws."

Bell v. Talbott, 252 Ky. 721, 68 S. W. (2d) 36, 39; Gay v. Commonwealth, 231 Ky. 396, 21 S. W. (2d) 480. The act of 1906, covering the subject of the state board of agriculture and the Kentucky State Fair, it is patent, was intended to be a substitute for the act conferring on the Kentucky Live Stock Breeders' Association, the management and control of the state fair, and since, admittedly, sections 31 and 37-8 did not confer upon the commissioner of agriculture any authority or right, nor require him to perform any duties respecting the state fair while it was under the jurisdiction of the Breeders' Association, a fortiori, after the enactment of the act of 1906, conferring the same management and control thereof on the state board of agriculture, neither section 31 nor section 37-8, vested in the commissioner the "management" of either the board or the fair. See Com. v. Florence, 192 Ky. 236, 232 S. W. 369; Ex parte Lawrence, 204 Ky. 568, 265 S. W. 287; 59 C. J. sec. 520, p. 919.

But without these rules of construction, it is patent that sections 31 and 37-8, when read in connection

with the act of which each is, respectively, a part, do not authorize or sustain the construction placed on them by the commissioner of agriculture.

Section 91 of the Constitution, not defining the duties of the commissioner of agriculture, but expressly conferring upon the General Assembly the privilege of doing so, and it having failed to confer upon him any authority or duty in connection with the Kentucky State Fair, other than the performance of the three duties stated above, we are unauthorized to construe and employ sections 31 and 37-8 so as to confer upon him in connection with the Kentucky State Fair any authority greater than that found in the expressed statutes.

The trial court's finding that he had the right to appoint his own clerk or clerks, removable at his pleasure, at a total salary not exceeding $1,200 per annum, is authorized by section 11 of the Acts of 1892 (section 41, Kentucky Statutes), and the other declarations of the rights of the parties as set forth in the judgment of the trial court harmonize with our view as hereinbefore set forth.

There remain two other questions which should be determined inasmuch as this is a declaratory judgment proceeding, the first of which is whether or not the appellants, Mrs. Donovan, Miss Betty Ashley, and A. E. Scott, should be paid compensation up to the time the board of agriculture discharged them. It is perfectly clear that Scott should be paid for that time, since he was appointed by the commissioner of agriculture under authority which we have hereinbefore adjudged he possessed. The appointment by the commissioner of the other two appellants was approved by the board and they served in their respective capacities until they were later discharged by the board. Clearly, the fact that they were nominally appointed by the commissioner, which was afterward approved by the board, was tantamount to their appointment by the latter, and they thereby became de jure appointees and should receive their compensation until they were discharged by the board, but for no greater period.

The other question concerns the amount of compensation the appellant Scott should receive, he being an authorized appointee of the commissioner of agriculture in a police capacity and in which he has continued

to serve. Both counsel and ourselves have been unable to find any statutory provision on the question, but evidently the Legislature did not intend for his servcies to be performed gratis; nor would the fees for making arrests of any violators of the law upon the state fair grounds even approach toward adequate compensation, which no doubt the Legislature intended should be received by him. Within the duties of the position to which he has been appointed there are many to be performed other than making arrests of law violators. In the exercise of his police functions he becomes a protector of the state's property in guarding it against the depredations of trespassers who might seriously injure and possibly destroy it. Such duties require his more or less constant presence upon the grounds, and for which reason, we repeat, that it could not possibly have been the intention of the Legislature to confine his compensation to such fees. We therefore conclude that he should receive a fixed monthly salary and that it should be determined by the board, since it, under our interpretation herein, has such management of the fair as to include the direction of its fiscal affairs and which, of course, embraces the amount of money that should be allotted to any particular item of expenditure. Of course, the board in the exercise of such authority may not act arbitrarily in fixing the compensation of the appellant Scott—or any other one who might later fill his place—below a reasonable standard for the services to be performed and to thereby prevent any competent appointee of the commissioner from accepting the place or to drive out of it any previous appointee. There are remedies afforded whereby such arbitrary action, if attempted, may be corrected, and if any such action has already been taken by the board those remedies may be resorted to.

Wherefore, for the reasons stated the judgment is affirmed.

The whole court sitting.