**Tom RANEY et al., Appellants,**

v.

**Thelma STOVALL, Treasurer, Commonwealth of Kentucky. Appellee.**

Court of Appeals of Kentucky.

Oct. 26, 1962.

Louis Cox, William A. Logan, Hazelrigg & Cox, Frankfort, J. E. Sanders, Pikeville, for appellant Raney.

Hunter B. Whitesell, Asst. Atty. Gen., Frankfort, for appellant Matthews.

Thomas F. Marshall, Funk, Chancellor & Marshall, Frankfort, for appellee.

CLAY, Commissioner.

This declaratory judgment action presents two significant questions. The first is whether the State Treasurer may question the constitutional legality of a warrant issued by the Commissioner of Finance. If she may properly do so, the ultimate issue is whether she must honor such warrants drawn in favor of the plaintiff Raney for compensation and allowances due him as a state senator. These questions arise under the following circumstances.

Raney was duly elected to the Senate in November 1959 for a four year term. His qualifications were accepted and approved by that body at the 1960 session of the General Assembly and he served throughout the session.

On April 1, 1960, he was appointed a deputy sheriff in Pike County and performed the duties of that office through December 31, 1961. Under a permissible construction of the terms of section 165 of the Kentucky Constitution and KRS 61.080 and 61.090, the office of senator and deputy sheriff are incompatible and the acceptance of the second office vacates the first. However, on February 13, 1962, being faced with this question, the Senate adopted a resolution recognizing Raney as a duly qualified senator.

The Commissioner of Finance in due course issued warrants covering compensation and allowances to which plaintiff Raney would be entitled if he was a de jure senator during a part of the period he held both offices (January 29, 1962 to March 16, 1962). The Treasurer refused to honor these warrants on the ground that as a matter of law plaintiff Raney had vacated the office of state senator on April 1, 1960, and payment of the claim would be illegal. This suit was then brought by Raney and the Commissioner of Finance against the Treasurer to require her to pay the claim, and to enjoin her from refusing to issue checks upon warrants properly presented by the Department of Finance. The Chancellor adjudged (1) the Treasurer may question the constitutional legality of claims against the Commonwealth, and (2) plaintiff Raney was not entitled to the compensation and allowances represented by the warrants involved in this controversy.

It is appellants' contention that the Treasurer must honor any warrant issued by the Department of Finance. The basis of this argument is that pertinent statutes vest the Department with exclusive authority to determine the propriety and legality of claims against the treasury, and require the Treasurer as a ministerial officer to pay them absolutely on the Department's order.

The statutory law neither specifically grants to the Department of Finance the exclusive power contended for nor denies the Treasurer a right to question claims. While the Commissioner of Finance is designated the chief financial officer of the State with the duty to protect its financial interests (KRS 42.020), the only direct powers he is given with respect to claims against the State are: (1) to preaudit expenditures (KRS 42.030(e)), and (2) to examine statements of indebtedness, and if found "correct" and there is a sufficient amount to pay the claim in the budget unit against which the claim is chargeable, to issue warrants upon the State Treasurer (KRS 45.-220(1)). There is no provision of the law

recognizing the Commissioner of Finance as the final arbiter of the legality of a claim against the Commonwealth.

It is true the Treasurer is directed to accept warrants drawn by the Department of Finance (KRS 41.150); shall not withdraw public moneys except on such warrants (KRS 41.110); and such warrants constitute authority for the disbursement of public money (KRS 41.120). To the extent the Department of Finance is authorized to certify the correctness of a claim from an accounting and bookkeeping standpoint, the warrant must be honored by the Treasurer. However, the specific right to question the validity of a claim on constitutional grounds is not reposed by statute in either the Department of Finance or the State Treasurer. Such right of either or both stems from the general provisions of both the Constitution and the statutes which fix a basic public policy with respect to the expenditure of public funds.

The first sentence of section 230 of the Constitution provides in part: "No money shall be drawn from the State Treasury, except in pursuance of appropriations made by law; * * *." Similarly KRS 44.010 recognizes proper claims upon the State Treasurer are those "authorized by law" and KRS 41.130(2) prohibits the issuance of a warrant unless the money to pay it has been "appropriated by law". Since the Constitution is the supreme law of the Commonwealth (see Rhea v. Newman, 153 Ky. 604, 156 S.W. 154, 44 L.R.A.,N.S., 989), the expenditure of public funds in violation thereof is forbidden.

As an original proposition, it would be curious indeed if a constitutional officer who is immediately in charge of the receipt and disbursement of all funds of the Commonwealth would be powerless to question the constitutional validity of a claim against it. While appellants contend that by virtue of a 1936 reorganization act the Treasurer was effectively stripped of everything but ministerial duties, we find nothing in the statutes that extinguishes his obligation to

function under the Constitution and in conformity with his constitutional oath of office (section 228 of that instrument).

This Court has consistently recognized that public officers charged with the disbursement of public funds may question the validity of a claim on the ground that it violates the Constitution. Norman, State Auditor v. Kentucky Board of Managers of World's Columbian Exposition, 93 Ky. 537, 20 S.W. 901; Rhea v. Newman, 153 Ky. 604, 156 S.W. 154, 44 L.R.A.,N.S., 989; Metcalf v. Howard, 304 Ky. 498, 201 S.W.2d 197; Reeves v. Gerard, Ky., 255 S.W.2d 21.

Appellants contend the Treasurer has only ministerial duties to perform, that she would not be liable on her bond in honoring these warrants, and that the record fails to show she was acting on the advice of the Attorney General. (Though not shown by the record, apparently the Attorney General had advised her that the offices were incompatible.) Assuming without deciding that these premises are correct, they do not resolve the basic issue. We are not here concerned with the characterization of the nature of the Treasurer's duties, nor with protecting her from liability, nor with the source of her legal advice. We are concerned with protecting the public from the illegal expenditure of public funds.

The Constitution fixes a policy with respect to public expenditures which surely must infuse the code of conduct of constitutional officers, particularly those charged with control of public funds. The designation by the legislature of certain specific duties and responsibilities of the Treasurer (under section 93 of the Constitution) did not extinguish the implied obligations of the office. In our opinion the Treasurer may properly, acting in good faith, upon a substantial constitutional ground, raise a question for judicial determination concerning the legality of a claim upon the treasury. The Chancellor correctly adjudged that phase of the controversy.

■ This brings us to the ultimate question of whether the Treasurer must honor the warrants of the Department of Finance drawn in favor of plaintiff Raney. For the purpose of outlining this controversy earlier in the opinion, we ventured an interpretation of the Constitution and the statutes concerning the incompatibility of the offices of senator and deputy sheriff. It is appellants' contention that we are without authority to make such a judicial determination because the Constitution places in another department of government the absolute and final authority to decide the issue.

Section 38 of our Constitution provides in part:

> "Each house of the General Assembly shall judge of the qualifications * * * of its members * * *."

The question before us has not heretofore been presented or decided in Kentucky. While the incompatibility of offices has been considered in a number of cases, and it has been held that a vacancy in an earlier office occurs when an incompatible office is subsequently accepted, we have not had a case involving a determination of that question by a legislative body with respect to one of its own members. We may even assume, as was stated in Meagher v. Howell, 171 Ky. 238, 188 S.W. 373, that from a judicial standpoint the acceptance of an incompatible office would create a vacancy in the office of the Senate. The whole point of appellants' argument is that a branch of the legislature, vested with full authority by the Constitution, has made a conclusive and contrary determination with which we are powerless to interfere.

This problem has been considered in other jurisdictions. Upon what we consider sound reasoning, authoritative adjudications are to the effect that the right of a legislative body to judge the qualifications of its members includes the right to decide finally whether or not one of them has become disqualified during his term of

office, and this decision is not subject to court review.

Substantially the identical situation was presented in State ex rel. Biggs v. Corley, 6 W.W.Harr. 135, 36 Del. 135, 172 A. 415. In that case three duly elected senators had subsequently accepted incompatible offices, but the Senate by resolution declared no vacancies existed and the three were accepted as fully qualified. The provisions of the Delaware Constitution are practically the same as ours with respect to both the authority of the legislature and the incompatibility of offices. It was held that since the sole jurisdiction to determine the qualifications of its members was placed by the Delaware Constitution in the Senate, the courts had no power to pass upon the question of whether or not the acceptance of another office disqualified the member. The court said (page 420 A.):

> "When a question involving an implied resignation of one office (it not being that of a member of a legislature), by the acceptance of another office, is presented to the courts for decision, the courts have jurisdiction in the full and complete sense of having power and authority to decide and to enforce the execution of what is decreed, and no difficulty arises. But, when the first office is that of a representative or senator in the General Assembly, and the question arises whether the acceptance of another office operates as an implied resignation of the first, * * * the Courts, ordinarily constituted, may not proceed to hear and adjudicate, for they are not the tribunals provided by the Constitution for the determination of such question. They have no jurisdiction for the reason that another and different tribunal possesses the sole jurisdiction; that is, the senate or the house as the case may be, under that provision of the Constitution which gives to each house of the legislature the right, power and authority to judge of the elections, returns and qualifications of

its own members. This is necessarily so, for the power and authority must reside somewhere, the departments of government must be separate and distinct, free and independent, and, while the courts will jealously guard its powers and jurisdictions, they will be careful not to infringe upon the powers, prerogatives and jurisdictions of the legislative department."

In People ex rel. Drake v. Mahaney, 13 Mich. 481, nine members of the House of Representatives were elected under a statute subsequently declared unconstitutional. The legislative body accepted those members as duly elected and qualified, and it was held that the courts had no authority to review this determination. In that case it was pointed out that the legislature and the courts might have conflicting views as to the qualifications of a member of that body but that the exclusive power to make the final determination had been lodged in the legislature by the Constitution. It was also stated in that opinion that it made no difference whether the question passed upon by the legislative body was a question of law or fact.

In State ex rel. Martin v. Gilmore, 20 Kan. 551, the question was whether or not the court had authority to determine that a member of the legislature had forfeited his office by reason of a violation of a statute. Therein the court said (page 554):

> "The constitution declares, article 2, section 8, that 'Each house shall be judge of the elections, returns, and qualifications of its own members.' This is a grant of power, and constitutes each house the ultimate tribunal as to the qualifications of its own members. * * * And this power is not exhausted when once it has been exercised, and a member admitted to his seat. It is a continuous power, and runs through the entire term. *At any time, and at all times during the terms of office,* each house is empowered to pass upon *the present qualifications of*

*its own members.* By section 5 of the same article, acceptance of a federal office vacates a member's seat. He ceases to be qualified, and of this the house is the judge. If it ousts a member on the claim that he has accepted a federal office, no court or other tribunal can reinstate him. *If it refuses to oust a member, his seat is beyond judicial challenge."* (Our emphasis.)

This Court has recognized in a case involving the Constitution of the United States and the Federal Congress that the vesting of certain powers in a legislative body may constitute exclusive power to pass upon the qualifications of its members, thereby depriving the court of authority to adjudicate on that subject. Burchell v. State Board of Election Commissioners, 252 Ky. 823, 68 S.W.2d 427.

It is contended by appellee that, assuming the Senate has the exclusive right to pass upon the qualifications of its members, the term "qualifications" is confined to those specified in section 32 of the Constitution (which relates to citizenship, age and residence). It is said that those matters are not in controversy and that what is here involved is a subsequent disqualification under another section of the Constitution. This limited view of the power of the legislature is not consistent with either reason or authority.

In determining the question, it is important to consider the reason and justification for this constitutional scheme. The work of a legislative body requires the active and continuous participation of its members, particularly when in session. There is a real necessity for the summary determination of their eligibility and qualifications. If the continuing qualifications of those members were subject to litigation in the courts, particularly during a session and particularly in view of unavoidable judicial delay, the conduct of public business could be completely disrupted.

We think this consideration has a significant bearing upon the power granted the legislature by section 38 of the Constitution. If the power were limited to the qualifications specified in section 32 thereof, it would be exhausted as soon as the membership of each house was accepted at the beginning of each term. At any given time thereafter, due to disqualifying events, there could exist extreme uncertainty with respect to the validity of votes cast by questioned members. The most practical method of dispelling such possible recurring confusion is by summary proceedings within the department so vitally affected.

The broad scope of the term "qualifications" has been accepted in decided cases. In Commonwealth v. Jones, 10 Bush. 725, 73 Ky. 725, 745, it was stated that this term "implies not only the presence of every requisite which the constitution demands, but also the absence of every disqualification which it imposes." Continuing qualifications are just as important as those initially required. If the power were limited as appellee contends, section 38 of the Constitution would not fulfill its apparent and pragmatic purpose. As was so clearly pointed out in State ex rel. Martin v. Gilmore, 20 Kan. 551, from which we have quoted above, the alleged disqualification in this case is precisely the type of question over which the legislature should have continuing jurisdiction. We conclude the Senate properly acted within the scope of the authority vested by section 38 of the Constitution.

■ Appellee suggests the action of the Senate with respect to Raney constituted such a clear violation of the Constitution that the courts should rectify the error. However, the fact that the legislature may make a wrong decision is no reason why the judiciary should invade what has been designated as the exclusive domain of another department of government. See Taylor v. Beckham, 108 Ky. 278, 56 S.W. 177, 49 L.R.A. 258. We must assume the Senate in good faith will not knowingly permit violations of other constitutional provisions. With respect to this subject matter, the

people have reposed that responsibility in the legislature. The courts are without jurisdiction to review its solemn determination.

It is our opinion that appellant Raney is entitled to the compensation and allowances withheld by the appellee and the warrant issued by the Department of Finance must be honored. To this extent the judgment must be reversed.

The judgment is affirmed in part and reversed in part, with directions to amend the judgment consistent with this opinion.

MONTGOMERY, J., dissenting.

MONTGOMERY, Judge (dissenting).

I respectfully dissent from so much of the majority opinion as holds that the state treasurer may question a claim as being unconstitutional. The majority opinion holds that such authority is implied. My objection is two-fold: (1) The constitutional section relied on does not support the implication; and (2) the Constitution expressly provides that the duties of the treasurer shall be fixed by statute and have so been fixed.

The fallacy in the implication is that Section 230 of the Constitution, relied on, deals with a prohibition against the payment of money from the Treasury unless appropriated. This authorizes the treasurer to question a claim on the ground that money has not been appropriated for it. It does not authorize the treasurer to question a claim as being constitutionally invalid.

This conclusion is supported by Sections 91 and 93 of the Constitution concerning the treasurer and other public officers and providing that their "duties and responsibilities * * * shall be prescribed by law." The inclusion of the same delegation of power to the General Assembly twice in the Constitution is a clear indication that the duties and responsibilities of the treasurer and such other named officers

should be prescribed by the General Assembly.

This is exactly the conclusion reached in Ferguson v. Chandler, 266 Ky. 694, 99 S.W.2d 732, when the same constitutional sections were considered with reference to the duties and responsibilities of the commissioner of agriculture, an officer named with the treasurer in Sections 91 and 93. In construing the reorganization act of 1934 concerning the duties of the commissioner of agriculture, this Court held that Section 91 of the Constitution did not define the duties of the commissioner but expressly conferred this privilege upon the General Assembly, and that the statute enacted by the General Assembly should be looked to in order to ascertain the commissioner's duties and responsibilities. The Ferguson v. Chandler decision would seem decisive of the question here. It is neither discussed, distinguished, nor overruled in the majority opinion. For the same result concerning the county treasurer, see Breathitt County v. Cockrell, 250 Ky. 743, 63 S.W. 2d 920, 92 A.L.R. 626.

The conclusion that the Ferguson v. Chandler decision is sound and should control here is fortified by reference to the various subsequent reorganization statutes which make the commissioner of finance the chief financial officer of the state, charged with protecting the financial interest of the state and expressly directing the payments of claims by the treasurer on warrants from the commissioner. Carroll's Kentucky Statutes, Section 4688; KRS 41.120, 41.150(1), and 41.160. KRS 41.120 expressly provides that the warrant of the commissioner of finance shall "constitute full and sufficient authority to the Treasurer for the disbursement of public money in the amount set forth."

It, therefore, is concluded that the treasurer's duties and responsibilities with respect to processing claims are purely ministerial so long as there are appropriated funds, and that the treasurer had no right to question the claim presented on constitutional grounds.