**FA`AMAUSILI POLA, Plaintiff,**

**v.**

**AMERICAN SAMOA GOVERNMENT**
**and THE SENATE, Defendants.**

High Court of American Samoa
Trial Division

CA No. 88-02

November 20, 2002

Before RICHMOND , Associate Justice, SAGAPOLUTELE, Associate Judge, and TUPUIVAO, Associate Judge.

Counsel: For Plaintiff, Charles V. Ala`ilima
For Defendant Senate, Robert K. Maez, Assistant Legislative Counsel
For Defendant American Samoa Government, Fiti Sunia, Attorney General

## OPINION AND ORDER

The court is asked in this case to decide important issues of constitutional dimensions: whether the Senate has the power to expel a Senator, after having been duly sworn-in, because of possible irregularities in his selection or because the Senate deemed he did not meet the qualifications of Article II § 3 of the Revised Constitution of American Samoa. We undertake this task with the utmost respect to the coordinate branches of government while cognizant that we must fulfill our mandate as the arbiter of the law of the land.

We hold that plaintiff Fa`amausili Pola ("Fa`amausili") is a member of the Senate as a Senator in office.

### Procedural and Factual Background

On March 5, 2002, one of two Senate seats from Senate District # 1[1]

---

[1] Senate District #1 is comprised of three counties on the Manu'a Island of Ta'u: Fitiuta, Faleasao, and Ta'u. A.S.C.A. § 2.0202. A village having the same name is located within each county. The entire Territory of American Samoa is divided into three political districts, Eastern, Western, and Manu`a. Am. Samoa Rev. Const. Art. V, § 10. The Manu'a District includes the three counties on the Island of Ta'u and the counties of Olosega and Ofu. *Id.* The counties of Olosega and Ofu are on two islands in the Manu'a group bearing the same name.

became vacant upon the passing of Senator Fa`afetai Lefiti.

The next regular election scheduled for that seat was in November 2004. Therefore, pursuant to Article II, § 13 of the Revised Constitution of American Samoa, the Governor of American Samoa issued a writ of election to fill the vacancy.[2] Fa`amausili was selected.[3] His selection was certified to the Governor on August 5, 2002, by the "Fa`alupega" ("County Chiefs") of the Counties of Fitituta, Faleasao and Ta'u.[4] On August 8, 2002, the Secretary of Samoan Affairs confirmed the selection to the President of the Senate.[5] The Governor confirmed the selection, also on August 8, 2002, to the President of the Senate.

Fa`amausili was sworn-in as the second Senator for Senate District #1 in a ceremony at the Senate Chambers on August 9, 2002. He assumed his duties as a Senator and represented his district during sessions of the

---

[2] Article II § 13 reads in its entirety:
> When vacancies occur in either House, the Governor or the person exercising the functions of Governor shall issue writs of election to fill such vacancies except that if any such vacancy shall occur within three months of the next regular election, no special election shall be held and the Governor shall appoint a qualified person to fill such vacancy. Prior to appointing such person, the Governor shall in the case of a representative consult with the county chief or county chiefs in the representative district concerned; and in the case of a senator, with the District Governor and county chiefs in the district concerned. A person elected to fill a vacancy or appointed by the Governor to fill a vacancy shall hold office during the remainder of the term of his predecessor.

[3] The parties have spilled much ink in this case as to whether or not Fa`amausili's selection was in accordance with Samoan custom. But given the relief sought, this point is irrelevant to our decision. *See* Part II.A, *infra*.

[4] County chiefs are required to certify the senatorial election results. AM. SAMOA REV. CONST. Art. II, § 4.

[5] While protocol has a role, no confirmations other than by the county chiefs' certifications are constitutionally or statutorily required. Nonetheless, a return of the writ of election by the District Governor of Manu'a to the Governor of American Samoa was also prepared contemporaneously with Secretary of Samoan Affairs' confirmation. Though the return was submitted to the Governor with the County Chiefs' certification, it was not signed by the District Governor due to his absence from the Territory beginning in July 2002 until September 22, 2002. Upon his return, the District Governor separately confirmed Fa`amausili's selection directly to the President of the Senate.

Senate. While serving, Fa`amausili did not commit any offense against the Senate during the course of conducting his duties as a Senator to warrant any punishment or sanction.

On September 9, 2002, two chiefs from Si'ufaga and Luma, both subvillages of the Village of Ta'u, complained to the President of the Senate about the procedure used for Fa`amausili's selection as Senator. In response to this letter, on September 13, 2002, the Senate Committee of the Whole voted to send the matter back to the three county councils of Senate District No. 1 to conduct a new selection pursuant to Article II, § 4. The Committee referred the matter to the entire Senate. On September 16, 2002, the Senate voted in favor of the Committee's recommendation and suspended Fa`amausili with pay.

Shortly thereafter, the Senate received another letter, this time from the Ta'u County Chief and one of the two authors of the first letter. The letter claimed that Fa`amausili was removed from the village council and was no longer a recognized *matai* in the village. On September 30, 2002, the Senate voted to remove Fa`amausili from office principally on the allegation in the second letter that he was not qualified to be a Senator under Article II, § 3.[6] The Senate is comprised of 18 members under Article II, § 2, and the expulsion vote, as were the two earlier votes, passed by less than two-thirds of the entire membership.

Fa`amausili, at all relevant times, including at the time of trial, held the *matai* title "Fa`amausili," duly registered with the Territorial Registrar of the American Samoa Government ("ASG"). He also testified, without any contravening evidence, that he fulfills his obligations as required by Samoan custom in the counties from which he was selected, the second aspect of the registered *matai* qualification under Article II, § 3. Fa`amausili also alleges that all the Senate votes were taken without any formal investigation, notice to him, or written resolution.

---

[6] Article II, § 3 states in part:
 A Senator shall--
 (a) be a United States National;
 (b) be at least 30 years of age at the time of his election;
 (c) have lived in American Samoa at least 5 years and have been a bona fide resident thereof for at least 1 year next preceding his election; and
 (d) be the registered matai of a Samoan family who fulfills his obligations as required by Samoan custom in the county from which he is elected.
 . . .

Fa`amausili brought this suit against both the Senate and ASG[7] seeking declaratory relief that he is the duly selected and sworn Senator from Senate District #1 and that the various Senate votes were a nullity. Furthermore, he seeks a writ of mandamus compelling the Senate to accord him all the rights and privileges of a Senator. The Senate filed a motion to dismiss the suit arguing that our review of the Senate actions was barred by the political question doctrine. We deferred ruling on that motion so that we could proceed expeditiously to the merits. Trial was held on October 18 and 21, 2002.

## Discussion

### A. Matters Not at Issue

We begin by noting what is not at issue in this case. There is no question that we have jurisdiction over the subject matter. *See Mauga v. Lutu*, 10 A.S.R.2d 115, 118 n.1 (Trial Div. 1989); *Tuitasi v. Lualemaga*, 4 A.S.R. 798, 808-09 (Trial Div. 1973); *Meredith v. Mola*, 4 A.S.R. 773, 776-77 (Trial Div. 1973). In this respect, the only question we must address is whether the "cause over which [we have] subject matter jurisdiction is 'justiciable.'" *Powell v. McCormack*, 395 U.S. 486, 512 (1969).

The parties also suggested the need for us to elaborate on the proper procedures and differences, if any, between the election of a Senator under the constitutional provisions for a regular biennial election, under Article II, § 4, and for filling a vacant Senate seat, under Article II, § 13. Indeed, even the Attorney General, in his limited appearance, expressed his desire that we give some guidance in this area, but as challenged by the two chiefs, the crux of this dispute arose over whether Fa`amausili was selected according to Samoan custom, and not whether the Governor acted properly in fulfilling his Article II, § 13 duties. Thus, absent full briefing, and because it is unnecessary to our decision, we leave this matter for another day.

Finally, as previously alluded to, we need not decide whether Fa`amausili's selection did in fact conform with Samoan custom. We will only decide the real question raised: whether the Senate had the power to expel Fa`amausili from the Senate after having been duly sworn-in. In making that decision, Fa`amausili has not asked us to declare that the Senate's conclusions, if any, about how he was selected were erroneous. Additionally, the Senate, in its answer and motions, has

---

[7] Even though the relief sought is directed at the Senate, Fa`amausili stated that he joined ASG as a party merely out of precaution. ASG, represented by the Attorney General, graciously agreed to stay on and cooperate to the fullest extent possible and appropriately participate.

likewise not urged us to delve into the substance of its decision.

B. Justiciability

Having concluded we have jurisdiction over this matter, we must still determine whether the case is justiciable.

> Two determinations must be made in this regard. First, we must decide whether the claim presented and the relief sought are of the type which admit of judicial resolution. Second, we must determine whether the structure of [our government] renders the issue presented a 'political question'—that is, a question which is not justiciable in [the High Court] because of the separation of powers provided by the Constitution.

*Powell*, 395 U.S. at 516-517.

*1. Relief Which Admits of Judicial Resolution*

Fa`amausil's first claim for declaratory relief asks us to find that he is the duly selected and sworn Senator from Senate District #1. It is clear that our Constitution reserves to the Senate "the right to judge the elections and qualifications of its 'members.'" *Tuitasi*, 4 A.S.R. at 810. It follows that this claim is "of the type that admit[s] of legislative adjudication rather than judicial resolution." *Id; see also Mola*, 4 A.S.R. at 778. We cannot therefore make such a determination. However, as will be seen, this determination is not germane to the resolution of this controversy.

Fa`amausili also seeks a determination that the Senate did not have the power to expel him from the Senate by way of its votes on September 16 and September 30, 2002. In essence, he is asking us to interpret the constitutional provisions governing the exclusion and expulsion of Senators, and whether the Senate's actions conformed with its constitutionally mandated powers. This court has the power to grant such relief:

> Especially is it competent and proper for this court to consider whether its [the Legislature's] proceedings are in conformity with the Constitution and laws, because, living under a written constitution, no branch or department of the government is supreme; and it is the province and duty of the judicial department to determine in cases regularly brought before them, whether the powers of any branch of the government, and even those of the [L]egislature in the enactment of laws, have been exercised in conformity to the Constitution; and if

they have not, to treat their acts as null and void.

*Powell*, 395 U.S. at 506 (quoting *Kilbourn v. Thompson*, 103 U.S. 168, 199 (1881)); *see also Vessel Fijian Swift v. Trial Div.*, 4 A.S.R. 983, 991 (App. Div. 1975) (judicial power is the power to "declare what the law is."); *Mola*, 4 A.S.R. at 778.

Finally, Fa'amausili seeks a writ of mandamus compelling the Senate and Senate staff to accord him the rights and privileges of a Senator. A writ of mandamus is normally issued "to compel the performance of a ministerial act or mandatory duty where: the petitioner has a specific, well defined legal right; the respondent has a corresponding specific, well defined duty; and there is a want of any other appropriate and adequate remedy." *Siofele v. Shimasaki*, 3 A.S.R.2d 3, 11 (Trial Div. 1988). Nevertheless, whether or not these requirements are met, it is not clear that we have the power to issue coercive relief against members of the Senate and, thus, whether "protection for the right asserted can be judicially molded." *Powell*, 395 U.S. at 517 (avoiding decision of this issue). The Senate did not present a position, one way or another, as to the propriety of this type of relief.

At this stage, however, it is unnecessary to decide whether we can, or even should, issue a writ of mandamus compelling the Senate to act one way or another. It is enough to note that "the government, like everyone else, is bound by court orders in proceedings to which it is a party." *Am. Samoa Gov't v. Satele*, 7 A.S.R.2d 154, 156 (Trial Div. 1988). While the Executive Branch is the contextual reference of this quote, we see no reason why it should not be equally applicable to the Senate, an entity which has itself sought relief from this Court in the past. *See, e.g., The Senate v. Lutali*, 27 A.S.R.2d 126 (Trial Div. 1995); *The Senate v. Lutali*, 26 A.S.R.2d 125 (Trial Div. 1994). We are confident that the Senate will abide by our ruling on the counts for declaratory relief.

*2. Political Question*

Having established that two of the counts for declaratory relief are justiciable, we must determine whether or not they present a political question which would bar us from reviewing them. The scope of the political question doctrine is vast, but a full exposition of its parameters is unnecessary. *See generally Baker v. Carr*, 396 U.S. 186 (1962); RONALD ROTUNDA AND JOHN NOWAK, TREATISE ON CONSTITUTIONAL LAW § 2.16 (2d Ed. 1992). The main thrust of the Senate's argument is that Article II § 22 of the Revised Constitution of American Samoa vests full power in the Senate to judge the "elections, returns, and qualifications of its own members" and that once the Senate has spoken the Court must

wholly defer to its judgment.[8] Basically, the Senate is reviving an old theme, already played out in this Court, that Article II, § 22 "is a 'textually demonstrated constitutional commitment' to the Senate of the 'adjudicatory power' to determine the issues now before us." *Mola*, 4 A.S.R. at 779.

a. SCOPE OF ARTICLE II, § 22

A brief overview of the Senate's power is relevant. We have before elaborated on the powers committed to the various branches of government with respect to the election of Senators. Article II, § 22

> merely provides that Congress is the judge of whether its members meet the qualifications set forth specifically in [Article II § 3]. Additionally, the Senate is the judge when 'all that is at stake is a determination of which candidates attracted a greater number of lawful ballots.' The issues of what need be done for the selection of a senator to conform to Art. II, § 4, and whether those requirements were met in the matter at bar are matters of constitutional interpretation. Such a determination falls within the traditional role accorded courts to interpret the law, and does not encroach on the Senate's power to judge specific qualifications or determine plurality of votes.

*Mola*, 4 A.S.R. at 779 (citations and footnotes omitted). What we must address now for the first time is *when* the Senate may invoke its Article II, § 22 powers.

In *Powell,* the Supreme Court reviewed the actions of the House of Representatives in refusing to seat the petitioner, who had been duly elected to serve in the 90th Congress. The Court was adamant in distinguishing between the House's powers to exclude and their powers to expel, noting that the distinction was not "merely one of form." *Powell*, 395 U.S. at 508. "Powell was 'excluded' [because] he was not administered the oath of office and was prevented from taking his seat. If he had been allowed to take the oath and subsequently had been required to surrender his seat, the House's action would have constituted an 'expulsion.'" *Id.* at 507 n.27.

---

[8] Article II, § 22 reads in its entirety: "Each House of the Legislature shall be the judge of the elections, returns, and qualifications of its own members and shall choose its officers." Because this provision speaks to "each House of the Legislature," whatever powers and duties we attribute to the Senate applies as well to the House of Representatives.

The House had excluded Powell, not for reasons arising out of his qualifications or number of votes received, but for "[m]atters of. alleged official misconduct." *Id.* at 490. The Court declared that the House's actions were unconstitutional because a person could only be *excluded* under the United States equivalent, in Article I, § 5 of the U.S. Constitution, of the Revised Constitution of America Samoa, Article II, § 22. *Id.* at 522. The House's actions in *Powell* were, in a sense, premature. The reasons the House cited, whether or not meritorious, were grounds for *expulsion* once in office, and expulsion required a distinct set of procedures under the United States equivalent, also in Article I, § 5 of the U.S. Constitution, of the Revised Constitution of American Samoa, Article II, § 11.[9] *Id.* at 506-512. For further discussion of the procedures constitutionally required in an expulsion hearing, *see* Part II.C.2, *infra*.

b. TUITASI V. LUALEMAGA

■ To be sure, there is language in *Tuitasi* that seemingly conflicts with this reading of *Powell*. Indeed, both sides have cited *Tuitasi* as supporting their claim. *Tuitasi* arose out of the Senate elections of 1972. *Tuitasi*, 4 A.S.R. at 799. Initially, the Election Commissioner ("Commissioner") certified Tuitasi as the duly elected Senator for his district. *Id.* Lualemaga, Tuitasi's opponent, filed a timely petition in this Court to order the Commissioner to certify his name instead. *Id.* While the case was pending, Tuitasi was sworn in by the Senate.

When this Court took up Lualemaga's case, the only issue before the Court was whether the Commissioner certified the proper candidate in conformity with Article II, § 4 of the Revised Constitution of American Samoa. Relying on the scant evidence, the Court held that indeed Lualemaga should have been certified and the Commissioner had no discretion to act otherwise. *See Faliu v. Fofo*, CA. No. 2504-72, slip op. at 1-2 (Trial Div. Jan. 8, 1973) (Opinion and Order). The Court ordered the Commissioner to certify Lualemaga and, in effect, void his original certification of Tuitasi. *Id.* Tuitasi moved to intervene in that matter claiming that he had in fact received more votes than Lualemaga and, furthermore, Lualemaga did not meet the residency requirements under Article II, § 3. The Court denied Tuitasi's motion to intervene because it was untimely. *See Faliu v. Fofo*, CA. No. 2504-72, slip op. at 1 (Trial Div. Feb. 9, 1973) (Memorandum and Order).

---

[9] Article II, § 11 reads in part: "Each house shall keep a journal of its proceedings and publish the same, determine its rules of procedure, punish members for disorderly behavior, and, with the consent of two-thirds of its entire membership, may expel a member, but not a second time for the same offense."

The Court also noted that the issues Tuitasi raised were not issues the Court could decide. *Id.* at 2. Citing *Mola* and *Powell,* the Court declared that whether a candidate meets the requirements under Article II, § 3 and/or received more votes in an election were non-justiciable issues which must be resolved by the Senate under Article II, § 22. *Id.* In a footnote, the Court added that Tuitasi had already petitioned the Senate concerning the same allegations. *Id.* n.2. That action strengthened the reasoning that this Court cannot be involved in such a determination. The Senate apparently made its choice because a few days after the Court's order was issued, it swore-in Lualemaga.[10] *Tuitasi*, 4 A.S.R. at 800.

Thereafter, Tuitasi brought his own motion in this Court for a declaratory judgment declaring him the duly elected Senator of that district. The Court again declared that it could not issue such an order because it "would be a clear usurpation of the Legislature's constitutional right [under Article II, § 22]." *Tuitasi,* 4 A.S.R. at 810. The analysis could have ended there, as the result was consistent with the Court's order on February 9, leaving the issue for the Senate. However, the Court added: "At this point, Respondent [Laulemaga] is clearly a 'member' of the Senate; and, consequently, it is the Senate that has the express constitutional right to adjudicate any dispute over his election or qualification. *Meredith v. Mola,* is not inopposite [sic] to this conclusion." *Id.*

This language could be viewed as declaring the Senate can exercise its Article II, § 22 powers to judge the qualifications of its members even after a Senator has been sworn-in. However, we do not attribute such a broad reading to this wording. This language was dicta. The Court had already declared, before Lualemaga was ever sworn-in, that it did not have the power to review Tuitasi's claim. Logically, that result would not change after Lualemaga had been sworn-in.

But furthermore, we think that this language was just an inartful attempt to restate what was already explicit in *Powell* and implicit in *Mola.* In essence, this Court's review of Senate action is barred by the political question doctrine only if the Senate actually renders a constitutional judgment pursuant to its Article II, § 22 powers. To do so, the Senate must make its judgment before the Senator is sworn-in and can consider only the qualifications enumerated in Article II, § 3. The proper exercise of this power renders the Senator-elect a "member" and thereby insulates the Senate's actions from review by the courts. *See generally Morgan v.*

[10] Because of the court's order to the Commissioner to certify Lualemaga and void his initial certification of Tuitasi, we assume, as did the parties in that action, that Tuitasi's initial swearing-in was a legal nullity.

*United States*, 801 F.2d 445 (D.C. Cir. 1986); *State ex rel. Turner v. Scott*, 269 N.W.2d 828 (Iowa 1978); *State v. Evans*, 735 P.2d 29 (Utah 1987).[11]

c. POWERS TO EXPEL

■■■ The Senate claims, however, that it cannot be precluded from judging the qualifications of a Senator even after he has been sworn-in. The Senate argues that it is possible a Senator may lose his *matai* status while in office, thereby making him ineligible to serve. If that were to happen, the Senate urges that it would have to remove him. The Senate did not take note that a Senator may also become ineligible in other ways: if he becomes an employee or public officer of the Government or if he is convicted of a felony. *See* AM. SAMOA REV. CONST. art. II, § 3.

To the extent that our Constitution requires a Senator to have met certain residency requirements "at the time of," or "preceding" his election, similar to the qualifications relied on in *Powell,* we are confident that our reading of *Powell* is correct: those qualifications are not reviewable by the Senate once they have chosen to seat a Senator. *Compare* AM. SAMOA REV. CONST. art. II, § 3, *with* U.S. CONST. art. I, § 2. But our Constitution also mandates that a Senator be a registered *matai*, that he not be a public officer, and that he cannot have been convicted of a felony. Our Constitution places no restriction that these qualifications are applicable only at the time a Senator is elected. Thus, we agree with the Senate that it has continuing jurisdiction over these aspects of qualification, even after a Senator has been sworn-in.

The issue then is which constitutional provisions and procedures are necessary to remove a Senator, already sworn-in, for reasons arising out of his qualifications. We have found only one case in which a court reviewed the actions of the Senate in regards to a sitting Senator. In *Raney v. Stovail*, 361 S.W.2d 518 (Ky. Ct. App. 1962), the court reviewed whether or not a Senate resolution declaring that a sitting Senator was duly qualified to serve, even after accepting a political appointment, was proper. The court there said that "the right of a legislative body to judge the qualifications of its members includes the right to decide finally whether or not one of them has become

---

[11] In any event, to the extent that our reading of *Tuitasi* is inaccurate, we are not bound by another decision of the Trial Division if there is a compelling reason not to follow it. *See Sw. Marina of Samoa v. S & S Contracting*, 5 A.S.R.2d 70, 74 (1987). In *Tuitasi,* the issue presented in this case was not before the court and any decision regarding the present issues was made without proper briefing. Furthermore, *stare decisis* is weaker in cases involving constitutional interpretation. *Id.*

269

disqualified during his term of office, and this decision is not subject to court review." *Id.* at 521-22. But because in that case the Senate voted to allow the Senator to continue serving, this is the first case we know of where a court must review the procedures for removing a sitting Senator because he may have become disqualified.

Contrary to the Senate's position, Article II, § 22 does not control. Instead, as we have already discussed, once a Senator has been sworn-in, his subsequent removal is an expulsion—whether he has become disqualified or has committed an offense against the Senate. Therefore, the Senate's power to act is governed by Article II, § 11, and all the protections it affords. *See Powell*, 395 U.S. at 506-12.

Because Fa`amausili was sworn-in, it is clear then that he was not *excluded* from the Senate but rather *expelled*. With that in mind, we review the Senate's votes to determine whether they were constitutional and whether they present a political question beyond our review.

C. Senate Votes

*1. September 16th*

The evidence adduced at trial clearly established that the September 16th vote was based on the Senate's belief that the method for selecting Fa`amausil was not conducted in accordance with Samoan custom as provided by Article II, § 4.[12] As already noted, the power to determine whether an election conformed with Article II, § 4 falls within this court's jurisdiction, not the Senate's. *See Mauga v. Lutu*, 10 A.S.R.2d 115, 118 (Trial Div. 1989); *Faiivae v. Mola*, 4 A.S.R. 834 (Trial Div. 1975); *Tuitasi*, 4 A.S.R. at 809; *Mola*, 4 A.S.R. at 780. The Senate has no authority to review the election process itself, whether it undertakes to do so before or after a Senator has been sworn-in.[13] The September 16 vote does not represent a political question beyond our review because it was unconstitutional. Thus, we determine that the vote was in effect null and void.

*2. September 30th*

The evidence adduced at trial established that the September 30th vote

---

[12] Article II, § 4 provides in part, "Senators shall be elected in accordance with Samoan custom by the county councils of the counties they are to represent …

[13] If ever the Senate questions the method of election of one of its Senator elects, it could seek a declaratory judgment from this court before swearing him in.

was also principally based on the Senate's belief that Fa`amausili was no longer recognized as the holder of a *matai* title, and therefore did not meet the qualifications to be a Senator under Article II § 3.[14] Had the Senate complied with Article II, § 11, the substance of their decision would have constituted a political question beyond our review. The record is clear that the Senate did not obtain the consent of two-thirds of its members, an explicit constitutional prerequisite for the expulsion of a Senator. Based on this alone, the Senate's actions on September 30th were unconstitutional and the vote thus null and void.

The record before us shows that Fa`amausili is a registered *matai* who is fulfilling his obligations under Samoan custom in the counties in Senate District No. 1. Nonetheless, it is possible that the Senate will choose to hold another hearing after we issue our opinion and order in this action. We caution it now that the expulsion of a Senator would not be proper by merely obtaining the consent of two-thirds of the Senate membership. Article II, § 11 encompasses certain constitutional due process rights beyond the two-thirds' requirement. For example, "a member whose expulsion is contemplated may as a matter of right address the House and participate fully in debate while a member-elect apparently does not have a similar right.[15] *Powell*, 395 U.S. at 510 n.30. Additionally, in certain situations a member might be "allowed to cross-examine other members during the expulsion debate." *Id.* Furthermore, any action taken by the Legislature is always subject to review in this court for violations of another constitutional clause. *See generally Bond v. Floyd*, 385 U.S. 116 (1966) (State House of Representatives' exclusion of member-elect violated First Amendment); *see also Luse v. Wray*, 254 N.W. 2d 324, 328 (Iowa 1977) ("Iowa courts have power to adjudicate substantial claims of deprivation of federal or Iowa constitutional rights by the houses of the Iowa General Assembly in the exercise of the houses' election contest powers.").

 We also think it clear that under the Due Process Clause of the Revised Constitution of American Samoa, Article I, § 2, a Senator can only be expelled for cause, either because he has become disqualified to serve or has committed an offense against the Senate. He, therefore, has

---

[14] The Senate has conceded that Fa`amausili has not committed an offense against the Senate which would subject him to expulsion. We therefore need not address now what would constitute an expellable offense. The Senate has not raised any disqualification issue other than Fa`amausili's mataiship. As pointed out, *infra* at 4, that under the evidence, Fa`amausili is a duly registered *matai* and fulfills his obligations under Samoan custom in Ta`u County.

[15] It is clear that Fa`amausili, not having been allowed to be present during the vote, was denied this right.

a constitutionally protected property interest in serving his term. *See Gilbert v. Homer*, 520 U.S. 924, 928-29 (1997) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972)). "[T]he requirements of due process contextually vary with the circumstances and the particular demands of the case." *Ferstle v. Am. Samoa Gov't*, 7 A.S.R.2d 26, 49 (Trial Div. 1988). However, "before an individual is *finally* deprived of a property interest," due process requires at a minimum notice of the grounds and opportunity to be heard "at a meaningful time and in a meaningful manner." *Id.* (quoting *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976)) (emphasis added).[16] Whatever other procedures are due, we leave for discussion and decision when the issue is squarely before us.

### Conclusion and Order

Fa`amausili's expulsion from the Senate of the Legislature of American Samoa, after he was sworn-in as a Senator, was not constitutionally valid. He remains a sitting Senator and is entitled to all rights and privileges of his office, including but not limited to full pay and allowances accruing and unpaid after he was sworn-in on August 9, 2002.

It is so ordered.

[16] Once again, Fa`amausili was not afforded this right at the September 30th vote.